```
                         UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF FLORIDA

                         CASE NO. 06-61942-CIV-GONZALEZ
                                 (01-6095-CR-GONZALEZ)
                         MAGISTRATE JUDGE P. A. WHITE
```

WILBERT McKREITH,                :

      Movant,              :

v.                               :        <u>REPORT OF</u>
                                               <u>MAGISTRATE JUDGE</u>
UNITED STATES OF AMERICA,        :

      Respondent.          :
_____

      Wilbert McKreith, a federal prisoner presently confined at the United States Prison in White Deer, Pennsylvania, filed a <u>pro se</u> motion to vacate pursuant to 28 U.S.C. §2255, attacking his convictions and sentences imposed upon a jury verdict of guilty entered in Case No. 01-6095-Cr-Gonzalez.

      This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

      For its consideration of the motion, memorandum and exhibits in support thereof, the Court has the government's response to an order to show cause, the movant's reply, and the underlying criminal file.

      McKreith raises sixteen claims as follow:

          1.   He received ineffective assistance of counsel when counsel failed to properly

1

        cross-examine witnesses in relation to the robbery of the Commerce Bank.

2. He received ineffective assistance of counsel when counsel failed to interview or call witnesses to testify in regards to the robbery of the Commerce Bank.

3. He received ineffective assistance of counsel when counsel failed to call exculpatory witnesses as promised in his opening statement in regard to the First Southern Bank robbery.

4. He received ineffective assistance of counsel when counsel failed to properly cross-examine witnesses in connection with the robbery of the First Southern Bank.

5. He received ineffective assistance of counsel when counsel failed to properly cross-examine witnesses in connection with the First Southern Bank robbery.

6. He received ineffective assistance of counsel when counsel failed to call Officer Lamb to testify about what the witnesses told him at the Bank of America crime scene.

7. He received ineffective assistance of counsel when counsel failed to interview and call Neville Pedro and Myles Chapman, exculpatory witnesses, for the Bank United robbery.

8. He received ineffective assistance of counsel when counsel failed to call eyewitnesses, Michele Kobler and Sabitino Santache, who described a white male robber in connections with the South Trust Bank robbery.

9. He received ineffective assistance of counsel when counsel failed to call favorable witnesses, whom he named in his opening statement, who <u>described</u> a male

2

        white perpetrator for the robbery of Bank of America.

10. He received ineffective assistance of counsel when counsel failed to call private investigators to rebut testimony of government witnesses, Maria Morales, Silvia Calvet, and Dale Martinez.

11. He received ineffective assistance of counsel when counsel failed to call investigators to offer rebuttal testimony against the aforementioned government witnesses.

12. The government's suppression of exculpatory police bulletin deprived him of a fair trial.

13. The government's suppression of a wanted flyer and news media summary deprived him of a fair trial.

14. He received ineffective assistance of counsel when counsel failed to obtain and use public records, the exculpatory FBI wanted flyer, and news media summary.

15. He received ineffective assistance of counsel when counsel failed to obtain public records and use them.

16. He received ineffective assistance of counsel when counsel failed to request that the latent print evidence recovered at each bank be compared against the FBI file of fingerprints.

The facts as revealed in the appellate opinion are as follow, <u>verbatim</u>:

        Eight federally-insured banks located in south Florida were robbed between January 20, 2000 and March 1,, 2001. All of the robberies contained a similar pattern. The banks were

robbed by a "light-skinned black person" wearing a plaid shirt and ski mask. The robber demanded, sometimes brandishing a gun, that the bank tellers place the money in a duffel bag the robber had carried into the bank with him. Several witnesses from these bank locations testified that the robber drove a maroon, burgundy or red-colored car. The banks utilized security and surveillance cameras, which captured images of these robberies.

Based on his investigation, Federal Bureau of Investigation Agent James Lewis developed a composite description of the robbery suspect and asked local south Florida police to "be on the lookout" for, among other things, a red or burgundy four-door Mercedes Benz with tinted windows. A local police officer contacted Agent Lewis when he identified a vehicle fitting that description. That vehicle was registered to McKreith.

Agent Lewis obtained surveillance pictures of the robberies and showed them to Ms. Kelly Morris, a federal employee who had known McKreith for the previous year and a half and had visited with McKreith at his residence. Morris told Agent Lewis that the person in the picture had a similar stature (*i.e.*, "the stomach sticking out"), height, and profile as McKreith. She also noted that, like the person shown in the banks' surveillance images, she had observed McKreith previously wearing two wrist watches. She further noticed that the person depicted in the surveillance pictures was wearing similar clothes that she had noticed McKreith wearing in the past. Ms. Morris testified, "He always wore the same type of clothing, plaid shirts, T-shirts, black jeans and double watches." She had also observed McKreith's maroon Mercedes parked outside his residence when she had visited him. Morris ultimately identified the person in the surveillance pictures as McKreith.

The FBI placed McKreith under surveillance and

followed him to a residence at 1540 N.W. 69th Terrace in Miami. McKreith's tax records listed that address as his residence. After receiving federal search warrants for both McKreith's Mercedes and that residence, Agents Tye Sager and Lewis executed the warrants on April 11, 2001. They searched for items connected to McKreith's suspected bank robberies. The search revealed, among other things, " a flannel or plaid type shirt," two black ski masks, and a "vinyl black semi-striped bag." A safe was also discovered in the master bedroom closet. It contained a .380-caliber handgun, several boxes of varying ammunition, and three wrist watches. McKreith was arrested at the residence and taken to an FBI field office. A search of McKreith's Mercedes discovered a bag similar to the bag used in one of the robberies, photographs of McKreith depicting him simultaneously wearing two watches, and a settlement statement for McKreith's purchase of the 1540 N.W. 69th Terrace residence.

The plaid shirt, manufactured by "Van Huessen," seized from the residence was sent to an FBI crime lab and was analyzed by forensic analyst Richard Vorder Bruegge. Mr. Vorder Bruegge analyzed the shirt, along with various videotapes and photographs, to determine if that shirt and other articles he was given matched the articles worn by the robber in the surveillance images. Vorder Bruegge testified that "[a]ll of the characteristics of this shirt matched the class characteristics of the shirt worn by the bank robber in those cases that we could see the shirt," which was seven of the eight robberies capture by surveillance images. Vorder Bruegge also testified that the black bag seized from McKreith's residence was "indistinguishable" from the bag seen in the photos at one of the bank robberies. He further testified that by examining the bank surveillance images, he was able to identify that "there are similarities" between McKreith and the person depicted in those images, including "the shape of the nose, mouth and

5

chin."

A jury found McKreith guilty of seven counts of bank robbery and four counts of using, carrying, and brandishing a firearm in relation to crimes of violence. Following a bench trial, McKreith was also found guilty of two counts of being a felon in possession of a firearm. The Court sentenced him to a total term of 1110 months imprisonment, followed by five years of supervised release. He prosecuted an appeal, and his convictions and sentences were affirmed in a written but unpublished opinion. (Cr. DE# 195). The Supreme Court denied his petition for a writ of certiorari on January 9, 2006. McKreith v. United States, 546 U.S. 1129 (2006). This timely motion to vacate ensued.

McKreith argues that he received ineffective assistance of counsel in all but two of his claims. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). Moreover, prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

In order to satisfy the prejudice prong, the movant must

demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, supra. at 394. In other words, the movant must prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687; see also, Lockhart v. Fretwell, 506 U.S. 364, 369 (1993), citing, Kimmelman v. Morrison, 477 U.S. 365 (1986)("The essence of an ineffective assistance of counsel claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). In Fretwell, the Supreme Court also concluded that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Fretwell, supra at 369, citing, United States v. Cronic, 466 U.S. 648, 653 (1984). The touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding, and "in judging prejudice and the likelihood of a different outcome, '[a] defendant has no entitlement to the luck of a lawless decisionmaker.'" Fretwell, supra at 370, citing, Strickland, supra at 695.

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." Hardwick v. Crosby, 320 F.3d 1127, 1161 (11 Cir. 2003), citing Chandler v. United States, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a

lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. den'd,___ U.S. ___, 123 S.Ct. 70 (2002), quoting, Strickland v. Washington, supra at 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991), cert. denied, 502 U.S. 1105 (1992)(a petitioner is not entitled to habeas corpus relief when his claims are merely conclusory allegations unsupported by specifics or in the face of the record are wholly incredible); Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983).

McKreith argues in his first claim that counsel rendered

8

ineffective assistance during the cross-examinations of various witnesses.  Specifically, he asserts that counsel should have done the following: 1) asked witness Marie Morales "if there was a great difference between the complexion of juror number 3 and [McKreith]," asked her a number of questions from a police report to refresh her recollection," and use the police reports to impeach her testimony concerning "mask eye hole irregularities;" 2) asked witness Sylvia Calvet a simple question about the robber's skin color, objected to the government's leading questions, moved to strike answers and request mistrials based upon prosecutorial misconduct during her testimony, asked questions about the information she provided regarding a gray Mercedes Benz, and refreshed her recollection with police reports; and, 3) cross-examine Agent Sager about information concerning a black ski mask and whether it was homemade with crooked eye holes.

There was consistent testimony by numerous witnesses concerning the serial bank robber's light skinned complexion and use of a ski mask during the robbery, and there were statements made by numerous witnesses describing the get away car.  While counsel may not have specifically asked for a comparison of juror number 3's complexion to McKreith's, he delved into the description of the bank robber and identification evidence during the trial.  In light of the substantial evidence of guild, McKreith has failed to show that there is a reasonable probability that he would have been acquitted but for counsel's perceived deficiencies during cross-examination of the witnesses on the points that have been identified in the motion to vacate.  He is not entitled to relief on his first claim.

9

In his second claim, McKreith argues that counsel performed deficiently with regard to witnesses and evidence regarding the robbery of the Commerce Bank. Specifically, he alleges that 1) counsel failed to interview witness Mixa Triado to determine whether additional information could be obtained from her and that counsel should have called her as a witness to testify that the person who robbed the Commerce Bank had a dark complexion and also to testify about her recollection of the ski mask worn by the robber. He alleges that counsel should have interviewed Gloria Torres to elicit additional information and to testify about her conversation with Officer Greaves. He further alleges that counsel should have interviewed Officer Greaves and elicited information concerning the ski mask and interviews he conducted while investigating the Commerce Bank robbery. Review of the reports submitted as exhibits to the motion to vacate reveal that McKreith has credited some witnesses with the descriptions and statements of others. While McKreith focuses on the testimony of the identified witnesses, he does not challenge the forensic evidence and testimony given by other witnesses. He has not demonstrated that counsel, who engaged in a zealous defense of his client, performed deficiently or that the outcome of the trial would have been different but for counsel's performance. He is not entitled to relief on his second claim.

In his third claim, McKreith argues that he received ineffective assistance of counsel when counsel failed to call Brenda Siflinger to testify that the robber was a white male or Jackie Gayle to testify that the robber was a white male who possibly fled in a Toyota. He further alleges that counsel did not mention Kathy Berman who purportedly witnessed the robber remove

his mask before exiting the bank or Jamie Militana and Greg Eaton, who were customers at the time of the robbery and identified the robber as a white male.

Again, McKreith does not challenge the forensic evidence introduced against him. Counsel did, in fact, put the robber's race at issue during the course of the trial. McKreith has not shown a reasonable probability that the result of the trial would have been different but for counsel's performance. He is not entitled to relief on his third claim.

McKreith argues in his fourth claim that he received ineffective assistance of counsel when counsel failed to properly cross-examine witnesses in connection with the robbery of the First Southern Bank. Specifically, he argues that counsel should have alerted the Court that Dale Martinez committed perjury when she testified that she never told the FBI or police that the robber was a mite male and that she previously stated that the robber wore a lumberjack shirt that was possibly made of flannel material. He maintains that counsel should have impeached Birsen Kurmanay about her inability to identify the race of the perpetrator and that counsel failed to properly cross-examine FBI Agent Sager on "important issues regarding witnesses' exculpatory statements which he memorialized in reports."

None of his allegations undermine the fundamental fairness of his trial. He has not overcome the strong presumption that counsel's performance was reasonable. No relief is warranted on this claim.

11

In his fifth claim, McKreith argues that he received ineffective assistance of counsel when counsel failed to call Police Officer Sota as a trial witness in connection with the First Southern Bank robbery. He proffers that Officer Sota could have testified that Dale Martinez initially identified the robber as a white male and that she could not positively identify the shirt that the robber was wearing. He further maintains that Officer Sota could have testified that Birsen Kurmanay could not give any officer a "definitive answer on the perpetrator's race, but could only describe his hand as a dark olive complexion." In his sixth claim, McKreith argues that counsel rendered ineffective assistance by failing to call Officer Lamb to testify about what the witnesses told him at the Bank of America crime scene. He maintains that counsel should have called officer Lamb to contradict Andrea Fernandez's testimony that the robber was a light skinned black man, instead of her initial statement that she could not identify the robber's race, and her statement that the getaway car was "possibly" a red or maroon Mercedes. Further, Officer Lamb could have testified that witness Farias never told him that the getaway car had a fish symbol on the bumper.

Again, McKreith has failed to overcome the presumption that counsel's performance was reasonable. Counsel cross-examined the witnesses and zealously defended his client. The jury considered the arguments made by counsel and acquitted McKreith on two counts and found him guilty on the remaining counts, so that it is clear that they considered the evidence and the arguments raised by counsel. McKreith has not shown a reasonable probability that the result of the trial would have been different had counsel performed in the manner suggested by McKreith. He is not entitled to relief

on his fifth and sixth claims.

In his seventh claim, McKreith argues that he received ineffective assistance of counsel when counsel failed to interview and call Neville Pedro and Myles Chapman as defense witnesses to the Bank United robbery. He argues that Pedro was a customer at the time of the robbery who observed the robbery and robber's departure. Pedro described the man as a thirty-five-year-old black male who was 6 feet tall and 180 pounds with dreadlocks. He faults counsel for failing to interview or call Pedro as a witness, since he was an eyewitness to the crime and the only witness in the position to identify the perpetrator. He does not proffer exactly what Pedro would have said or provide an affidavit prepared by Pedro providing the substance of his proposed testimony. He further argues that counsel should have called Chapman to affirm Pedro's testimony. In his eighth claim, he complains, once again, about counsel's failure to interview and subpoena witnesses to testify that they initially described the robber as a white male. He makes the same argument in his ninth claim.

Not only was there eyewitness testimony, there was forensic evidence and bank videotapes which eventually lined McKreith to each of the bank robberies. The jury heard the evidence, including counsel's cross-examinations and arguments which included questions concerning the robber's race. After consideration of all the evidence, the jury found the government had proven most, but not all, of the charges beyond a reasonable doubt. McKreith's challenges to counsel's assistance do not show that the trial was fundamentally unfair or that there is a reasonable probability that the result of the trial would have been different but for counsel's

performance.  He is not entitled to relief on his seventh, eighth, and ninth claims.

In his tenth claim, McKreith argues that counsel rendered ineffective assistance when he failed to call private investigators to rebut Maria Morales, Silvia Calvet, and Dale Martinez's testimony concerning the bank robber's race and skin complexion. He argues in his eleventh claim that counsel's failure to call Elia Martinez as a witness in connection with the Bank of America robbery was deficient because she could have used her height to gauge the robbers height and possibly show that she was the same height as the robber, whom she supposedly stood beside during the robbery.  Again, none of these allegations rise to the level of deficient performance necessary to overrule the jury's verdict of guilty in this matter.  McKreith has not shown prejudice, in that there is no reasonable probability that the result of the trial would have been different but for counsel's advice, nor has he shown that his trial was fundamentally unfair.  He is not entitled to relief on his tenth or eleventh claims.

In his fourteenth claim, McKreith argues that counsel rendered ineffective assistance by failing to obtain and use public records--the FBI wanted flyer and news media summary--to impeach eyewitness testimony and show that the authorities were initially looking for a white male.  There does not appear to be an evidentiary avenue available for entry of those documents.  He has not overcome the strong presumption that counsel performed reasonably.  He is not entitled to relief on his fourteenth claim.

Similarly, in his fifteenth and sixteenth claims, McKreith has

14

failed to show that counsel's performance was deficient or that he suffered prejudice as a result.  He argues that counsel should have introduced the testimony of Roy McKreith and Corrine McKreith to show that they gave him money during the eleven month period during which the robberies occurred.  Presumably, he believes that this could have overcome the government's evidence of his numerous electronic and real estate purchases of property for cash.  However, even if this evidence had been introduced, it would not have mandated a conclusion that that was the only money that he had access to during that period.  That is, he could have received money from the witnesses and spent the proceeds from the bank robberies.  He is not entitled to relief on his fifteenth and sixteenth claims.

As to his remaining claims, Claims Twelve and Thirteen, McKreith alleges that the government suppressed certain evidence, which deprived him of a fair trial.  He did not raise either claim on direct appeal.

There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 movant demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7 Cir. 1994); Graziano v. United States, 83 F.3d 587 (2d Cir. 1996) (Collateral attack on a final judgment in a criminal case is

15

generally available under §2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice.); United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995).

McKreith argues in his twelfth claim that the government suppressed an exculpatory police bulletin generated by the Broward County Sheriff's Office, which identified the bank robber as a white male. He argues in his thirteenth claim that the government's suppressed a wanted flyer and news media summary which also identified the bank robber as a white male or a light skinned black male. The petitioner identifies himself as a black male. Although he identifies arguments that counsel could have made on his behalf as a result of those documents, he has alleged or demonstrated that the government violated his constitutional rights. Thus, those claims are barred from review in this collateral proceeding.

It is therefore recommended that the motion to vacate sentence be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed in chambers at Miami, Florida, this 16th day of November, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

```
cc:   Wilbert McKreith, Pro Se
      Reg. No. 14398-050
      U.S.P. - Allenwood
      P.O. Box 3000
      White Deer, PA 17887

      Counsel of Record
```